The court, please. My name is Joel Brett. I represent Lincoln County, Missouri. This is a Monell claim by the plaintiffs who were sexually assaulted by a sheriff's deputy who was working as a drug court tracker for the drug court. A portion of this case has already been before this court on a qualified immunity claim. When the Supreme Court decided the case as it follows Monell, and when this court decided cases under the Monell theory, it was generally stressed that this required a high and stringent standard in order to impose liability on a municipality or local government in order to avoid the Monell claims devolving into what would essentially be municipal liability for the criminal or intentional acts or tortious acts of an employee. Because that alone is not sufficient to impose liability on the local government. Let me alert both counsel head on what I think this case boils down to in terms of a critical question. And that is under Canton v. Harris, when is there quote single incident liability for failure to supervise? Does there have to be a showing of a pattern of other unsupervised employees? Does it require a showing of a pattern of this employee's misconduct? Or does it require no pattern showing at all? In what case law? None of the cases. You're all citing failure to train cases and then legal principles should apply to failure to supervise, but that only frames the issue that doesn't get to the heart of it. The Connick, City of Ohio, Harris, the single incident case and these were failure to train cases require what I think are three things. Either there has to be some sort of pattern of misconduct. So that changes where there's an incident and the policymaker Well except they say that Canton suggests there can be no pattern liability cases and they give an example. That's why I included no pattern in my alternatives. So that is a situation where there still has to be some obvious need because that's the standard I believe. Deliberate indifference to an obvious need to supervise or train and that deliberate indifference has to be because there's likelihood a high predictable likelihood that there's going to be a constitutional violation. So I think there has to be more under Canton, under the cases that follow than this idea that if there's an injury then the city is automatically liable whether or not there was any knowledge by the policymaker. Okay if there has to be a pattern what would constitute a pattern? One employee one unsupervised allegedly unsupervised employee screwing up many times or does it require many employees doing the same So it could be one employee screwing up a number of times. That could be a possibility So here we have four plans and one employee heading toward a pattern. Well except no one knew about the pattern and there still has to be some knowledge, something obvious. It wasn't as though these sexual assaults occurred and then someone found out about it and then nothing was done. That's where I think the pattern issue comes in. Well what about this allegation that because nobody supervised him and everybody agrees he had no supervision that had he just even been required to submit reports as to where he, as to the people that he checked in on because he was a checker, that was his title wasn't it? Tracker. Tracker. The people that he checked in on several of the people said everybody in the program knew that if you were a man and you were in it for three years you'd maybe get visited twice and if you're a woman, particularly an attractive woman, he'd be at your house four times a month I mean that's, is that turning a blind eye to something that's obvious to anybody who would have looked? Well there was no blind eye to turn because and I apparently did a very poor job of it distinguishing this to the jury. That was handled separate and outside of the sheriff's department. This was the drug court, this panel of people the tracker was part of that drug court team and no one ever told the sheriff. I think that ship has sailed. I mean I know you argued that the sheriff shouldn't have been the one supervising his own deputy but I think you lost that argument. Unless you want to re-litigate that issue. I don't think I don't think you have to concede that one. Well I still don't believe that the policy maker is charged with this exceptional task of knowing that there was a need for supervision or for training. The supervision and training are treated similarly. There's just very few supervision cases and so when they're at least for analysis purpose they're treated similarly but if you look at this from a practical standpoint it's easy to look at failure to train because there was medical, the Canton case involved a lack of medical training. Someone's injured or not treated. That's a problem but the court still said well look just because there was inadequate training or you think there was inadequate training that doesn't necessarily mean that resulted in the injury. People make mistakes, jailors make mistakes and if you look at all these failure trains, the Brady, the Connick case where the prosecutors were not trained in Brady, these are all training or supervision because I think they're linked together. I think when we, and I use the example and I think the Canton case talked about this, not about tasers, but if you have new tasers and you give the tasers to some people, some police officers coming out of school and you don't train them and you don't supervise them and by supervision and that's I think where there's a breakdown and again I'm not sure how this argument goes here but does supervision mean that he's going to be followed around 24 hours a day to make sure he doesn't do anything to these drug court participants when the drug court sending this guy out in the first place, this might be the ship that sailed again, but the sheriff's department wasn't guiding this person to these women's houses, he was going on Thanksgiving, he was going on his day off, the sheriff's department wasn't in charge of tracking the tracker, the drug court commission or the drug court was. But back to my taser example, if you're going to supervise that means that someone with experience with this taser is going to supervise the person who's learning how to use the taser, it's part of the training, it just makes sense. Sure that's true in some cases, but there are some misdeeds that you shouldn't need to train, but you might need to supervise and it strikes me that sexually assaulting your clients to call them for lack of a better word would be an example of that. You shouldn't have to train a law enforcement officer of either gender not to sexually assault their people under their guidance or control. It doesn't take training, it might take supervision. But that's Parrish versus Ball, that's this court's analysis of sexual assault, which was Parrish versus Ball and Andrews versus Fowler and the recent case of Doe versus Gay, where there was the court found that there's no presumption, no obvious need to supervise a law enforcement officer who knows the law, who's supposed to follow the law to make sure that that person isn't sexually assaulting another person who he's stopped or who he's tracking. So those cases, but each of those cases talk about whether there was a pattern or not, whether there was knowledge by the policy maker about prior incidents. In fact, the Doe versus Gay case, which is very recent, really the court said we don't care about what happened previously. But that still went to the training, in fact that was less about training and supervision and more about a pattern of misconduct. You haven't challenged the jury instruction. I didn't object to that particular jury instruction because I had filed two motions for summary judgment, the motion a judgment on the law at the close of the plaintiff's case and the judgment at the close and a post-trial motion. The way to preserve an instruction error is not to file a summary judgment motion. You've got to fight that every step of the way, including in the instructions and we don't have an instruction issue, so whatever was instructed was the law of the case. I think the law of the case, prior to submitting the instruction on the judgment as a matter of law was incorrect. I thought the court looking at this, that there was no evidence whatsoever that this policymaker, that there was an obvious risk, that there was something that he knew about that would have caused him to impose some sort of supervision. And the other reality is, let's say he knew there was a risk. Let's say one of the plaintiffs came forward and said, Sheriff, I'm being sexually assaulted. Well, he's going to do presumably exactly what he did in this case. It's not going to be, okay, well, you did this, we're going to place more supervision on you now. That's not the remedy. And I think that's what the courts have consistently said is, you have to specify what it is that you want. If it's inadequate training, you have to say, what is the lack of training? What was the lack of training in the Brady case? Supervision can not only be an after-the-fact remedy, but what I think the argument here is that had he been supervised and knew somebody was looking over his shoulder, whether it was having a second person accompany him on these home visits to female offenders, whether it was spot checks or something like that, that maybe he wouldn't have been as aggressive in assaulting these women had he known somebody was actually looking at the reports that said he was visiting women's homes five times a month and he was visiting male women. Had he known that was being done, maybe he wouldn't have assaulted them in the first place. But isn't that the speculation that we want to avoid? Isn't that what a jury decides on the jury? You asked for a jury instruction on that and they gave a jury instruction on that issue and the jury found against you. They did. So I guess, I mean, it really comes down to, should it ever have gone to the jury in the first place? And that's my argument. And my contention still is that even though it's an objective standard, there has to be some notification, some reason that it's a high standard. The policymaker would have had to have known that there was a high predictability, a high probability of this person sexually assaulting these women. And the fact is that the drug court that was supervising the argument was actually placing the tracker, had some notice that there were some problems, and had nothing, wasn't associated with the county sheriff's department or the county. So again, that argument fell on deaf ears with the jury. But, and the other part is this has to be the motivating factor. I think that's the other connection. That's the other part of this difficult standard is when there's a sexual assault, and if you look at each of those sexual assault cases, and again, they're not supervision cases, but there has to be some connection between this person who's a sexual predator and the fact that he's not trained or supervised. And I don't think there is a causal link here. He was going to do this some way or another because he was, he had meetings. That's clearly a sufficiency argument. But it seems to me the argument comes down to, if you assume the sheriff should have been the one supervising him and didn't, that there were, were there enough red flags out there that had he been exercising his supervisory responsibility, that he could have connected the dots. Some people in the drug court knew some things. People in the jail knew that he was taking female offenders outside for smoke breaks and things that were clearly violating jail regulations. There were a lot of different things a lot of different people knew, none of which the sheriff admittedly knew. But had he been supervising and asked, could he have connected the dots? Is he required to do that? I don't believe, I think when the drug court knew that cigarette breaks, I think that unless he was doing something that would have indicated to someone, and again, two judges, a drug court team, a psychologist, probation, they all knew that there was some goofy things that he was doing. But they weren't sexual assault. It wasn't a violent crime. He wasn't, didn't have a propensity for violent or being predatory. So, in my opinion, holding the county responsible for this sexual predator doesn't fit in with the Was the jury instructed that the sheriff had a duty to supervise Edmund? No. The wording was, and again, we cobbled this together with counsel. The instruction was that the instruction said that I think that he had to believe that the jury had to believe that the sheriff was the supervisor. And you argued that he was not. Right. Not only that, but that he had nothing to do with making sure, had any knowledge that this guy was going to these houses late at night or on Thanksgiving or any of those things. That's when I use the phrase, the ship has sailed. I want to make sure, I don't mean to be flippant, but as I understood the state of the record is you argued he was not the supervisor, it was the drug court judges. Drug court judges said no, it was the sheriff. That issue was submitted to the jury and the jury made a finding it was the sheriff. Mr. Schock. May it please the court, my name is Beavis Schock. I represent SM, KW, LM and KS. What I'd like to do is first address the issue that was discussed right at the end and just read you the first element of the jury instructions. It says, first, the Lincoln County Sheriff as policy maker for Lincoln County was responsible for supervising Scott Edwards as drug court tracker. So that was the very first element laid out very clearly. The jury had to find that to be true. What did the instructions say about shared supervisory responsibility? It said nothing except that the need for supervision was obvious, so that would get into the next element. It did not say that there were others responsible. And that instruction... I would say it was contrary to our law of the case, but that's water over the dam. Since the issue is not preserved. Your Honor, may I address your... Your Honor, may I address the question that you asked my opponent first, which is what is the requirement? I think the three ones you described were a pattern of other employees, a pattern of one employee, and no pattern at all. So I'd address the Canton case, which does have language in it of specific events over time. So it talks about the plural. Therefore, I believe that there does have to be a series of events in order to get liability. Just one event is no good. And as my opponent I think correctly said, the Parrish case is just one event. What I'd like to do is talk just for a moment about the events that were before the jury that can provide that information. But the decision maker has to know. I think there's two ways to look at that. The word obvious says that there should be constructive notice. If he did know it, then we would have kept Mr. Kriegbaum in personally. As it was, Kriegbaum was out because we can't prove he knew anything. But I would like to suggest to the Court that in the facts, there are things that he did do, and I say he, I'm talking about Scott Edwards, and there are things that the Sheriff didn't do. But let me address the four things that Edwards did do that we proved that get us to the constructive notice of obvious. And we've talked about most of them already. Obviously, the giving of all the time to the ladies. And who knew that? Who knew that? And how should Kriegbaum have been constructively knowledgeable of that? The gentleman, I can't remember, Griffin. He said everybody knew. Who's Griffin again? Griffin was one of the participants in the drug court. He's another client. He actually was a man, he described himself as the golden boy of drug court. He was the guy who actually got well and got better and followed all the rules. And he said everybody knew. He was a rehabbed defendant. He was not an employee. Can I just address this sort of interesting logical issue that your question comes to, Judge Malloy, which is how do we get to constructive? Well, that's really the way the issue of obvious is structured logically. If it's obvious, but the person doesn't know and there can be liability, then what the plaintiff must show is sort of a circle of facts, known by lots of people. And so if the sheriff had looked, he would have known. In other words, I think the case law rejects the bury your head in the sand defense for the government entity. It works for the individual liability, and that's why we lost up in this court a year ago, two years ago. But when there is this, if we're going to have the obvious standard, which is well established in the law, then sort of by definition, you bring in facts that were taking place and you say, hey, these facts should have come out. So if I can just look at four of them. We've talked about the smoke breaks. I note that Mr. Kriegbaum, the sheriff, said that his white shirts knew, and they should have told him. So that's important. His senior people knew. This is admitted in the record, discussed in the brief. They knew, they didn't do anything about the smoke breaks, and he said, I guess rightly, that that's pretty serious. When somebody's sentenced to jail and they're taken outside the jail for smoking for McDonald's, that that is a serious matter. I mean, being in jail is being in jail. Another one, though, is that Mr. Edwards, the perpetrator of all this, put S.M. in a hotel without any authority. And one of the drug court judges, Commissioner then Sullivan, said he sort of shook his head on the stand, and this is right in the record, he says, I don't know how possibly Edwards could have done that. He had no authority to do that. That's a terrible thing. He took S.M. out of her mother's home and put her in this I don't wish to use offensive language, but Mr. Edwards said to employees, now this is different than the sort of everybody knew which came from a participant, Mr. Griffin. This is in what they called staffing. So they'd have meetings before court and say, how's so-and-so doing? How's so-and-so doing? And Edwards stated this is drug court staff. Before they actually get into court, they would have a private meeting. Craig Baum's not there. Correct. Correct. Absolutely. If Craig Baum had been there, I think we would have kept him in, in the first round. But he used these offensive statements. A stiff penis would help her. The hot dog in the mayonnaise jar. Now, I can tell you as a practicing attorney, as a regular common sense human being, that there is a line in a professional environment. I mean, somebody might say that in a fraternity house, but in a professional environment, statements of that nature are so far beyond the line that it, I think, meets the standard of obviousness. Let's focus on deliberate indifference. Where's your failure to supervise case? I know you only cite failure to train cases and Levy just said the standard was the same. Atkinson and Robinette denied supervisor liability. What's your favorite failure to supervise deliberate indifference case? I think that Harris v. Pagedale is one. There we have a series of prior sexual incidents, and that one the liability was found, Your Honor. That's my favorite. I don't see it in your brief. Let's see if I cited it in my brief. I might have seen it in prep for oral arguments, sir. It's not cited in my brief, Your Honor. I can send a letter with the exact citation. Please give us a 2018 letter. I will do that, Your Honor. And then let's see. It seems to me the problem I have with this case is that even if the evidence was sufficient to show that Edmonds should have been obvious, Edmonds needed supervision. Isn't the question whether it was obvious that there was need for additional supervision by the Sheriff's Department? And I have the answer to that one, I think. Your Honor, let me draw your attention to a colloquy that I had with Sheriff Kriegbaum on the stand. And this is at page 48. If I can read it, it's only about 20, 30 words. 48 of what? Of my brief, sir. Do you agree there's a risk when law enforcements are alone with females? Yes, sir. Do you think it's an obvious risk? I would think so. Yes. Do you agree a person who has tremendous power over other people needs to be supervised? Yes. And there is this at the trial we developed this power disparity analysis. In the 30 years you spent in law enforcement, you observed that sometimes commit misconduct. I think we're missing a person. Officers commit misconduct. Well, yes, I did. And also sexual misconduct. Is that right? Now, yes, sir. So he admitted on the stand that it was obvious and that the precise kind of... I said that. I mean, that's a... You talk about he disciplined his chief deputy who under that line of that chain of command misbehaved. But Edmonds wasn't in his direct chain of commands during the time he was on the drug, acting for the drug court. So I think the evidence is it was before that Craigbaum ignored the drug court basically with the assumption. Everybody assumed the drug court was doing its job. So where was the terrifically obvious... Where was it terrifically obvious to a sheriff whose employee was... The second role in which the sheriff was not the immediate supervisor. Where's the need for additional supervision? Why does the sheriff have to assume that the drug court isn't providing the supervision that was needed for drug court tests? And I think I can answer that, your honor. It's because he agreed to do it. Well, his predecessor agreed to do it, binding his agency. In the MOU paragraph 7? Yes, sir. Which he didn't know. Okay, so that's interesting. We agree with that. It was startling at the deposition when we showed it to him and he said, oh, first time I've seen that. But this goes to the bury your head in the sand defense. The bury your head in the sand defense is rejected for the government. The Kriegbaum can get out of it personally by saying, gee, I paid no attention. But if he had a duty to do that under a signed document, didn't he have the job at the beginning of his term to say I've been elected. I'm taking over this position. Now I have to find out what I have to do. He has to do that. He has to know what his job is and if he doesn't, it does fall, I think, the responsibility falls on the county through his inaction. Okay, I think that's clearly, I don't know if it's your best answer, it's clearly an answer. It seems to me that if there was no sovereign immunity in play here, all of these institutions would have been Monell defendants. I wonder how the case would have played out. Everyone else was immune, so we you managed to get a jury instruction in which the other institutions with some responsibility weren't in play. But I'm not sure that's enough that gets you around the deliberate indifference problem. Well, as I read deliberate indifference Yes, and I'll read you what I think the standard is in the case law. It's conscious or reckless disregard for the consequences of one's actions. Now, let me note that that is defined right in the jury instruction at the bottom. So we told the jury what the test was and of course there are many cases where, other cases that say we assume the jury can do its job. The jury is able to follow the standard. Well, of course, the Farmer vs. Brennan case talks about a continuum. You have negligence, you have willful conduct, and somewhere in the middle is deliberate indifference. I keep coming back to the fact that to not make an inquiry about what one's job is as a government official, that is deliberate indifference. To me it meets the standard. It's what we argued and I think the jury found it. Well, sure, but it doesn't meet the standard of what's so obvious that constitutional violations are going to result because of my inaction. Okay, and if I can answer that. My answer to that is that there is supposed to be some kind of a nexus between the kind of constitutional violation and the circumstances of the case. And that's where I come back to the facts I mentioned earlier. The obscenities he mentioned, the fact that everybody knew, that he was paying all the attention to the ladies, the smoke breaks, that these factors, so there's a word sometimes used in the criminal law called grooming, which is when a person sort of grooms the victim for what's going to happen. And I would suggest that these smoke breaks meet that test exactly. Those are very, very serious matters. Because they are, in other words, the taking them out for the smoke break is a grooming indicator, just like the hotel is the biggest one of all. Putting a lady in a hotel, I mean, it's pretty hard to justify that. But that was a drug charger kind of thing. That is correct. That is correct, Your Honor. I'm sorry? The smoke breaks, not necessarily. Yes, yes. I'd agree with that, Your Honor. That's the end of my time, and I'm so appreciative of your taking time to converse today about this case with me, and I'm honored to present it on behalf of my clients. Thank you. Mr. Brett, have some time. No, Your Honor. I'll give you a couple minutes if you'd like. Again, if we look at the sexual assault cases, although they're primarily failure-trained cases, those cases, even when there's some hints of some wrongdoing that was in front of the chief of police in Parrish v. Ball or Andrews v. Fowler, even when there were incidents of prior sexual misconduct that's not as severe, the court still ruled that there must be some obvious need to train or, again, I'm using them interchangeably even though there's nothing that says they're interchangeable, the need to supervise. And those cases, in fact, there was one case, and I think that was Fowler, where the court gave summary judgment to the municipality and then held the chief in and said, you know, the chief's responsible because he knew about these prior incidents. And in this case, these were drug court participants who were treated slightly differently. They were in jail, but they were still part of the drug court. He was their tracker. He knew them. What indication is there to anyone, the sheriff, other white shirts, the drug court team, the drug court commissioners, that he was going to sexually assault or was maybe then sexually assaulting these women? There has to be more than just a hint, I believe, for grooming is, I think that's far away from what's going on in this case. I think this guy was a he was going to take advantage of his position, whether he had a clock in or out or had an answer. He was answering to the drug court. The drug court administrator, Heather Graham, testified that he turned in pieces of paper indicating what he had found and that he was doing the drug court tracking, and none of that was shared with the sheriff. Thank you. Thank you, counsel. The case is well briefed and argued and pristine. Pristine issues.